UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JEFFREY S. ABERNATHY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 1: 21 CV 182 DDN |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Jeffrey S. Abernathy for disability insurance benefits (DIB) under Title II of the Social Security Act, and Supplemental Security Income (SSI) under Title XVI of the Act. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff was born on July 20, 1968, and was 50 years old on his alleged onset date. (Tr. 239.) He protectively filed his applications for DIB and SSI on September 11, 2019, alleging a disability onset date of May 28, 2019. (Docs. 215, 217.) In his Disability Report, he alleged disability due to Rocky Mountain Spotted Fever (RMSF), arthritis, osteonecrosis, bilateral hip replacement, and anxiety. (Tr. 250.) His claims were denied, and he requested a hearing before an administrative law judge (ALJ). (Tr. 137.)

On March 29, 2021, following a hearing, the ALJ concluded that plaintiff was not disabled under the Act. (Tr. 12-24.) The Appeals Council denied review. Accordingly,

the ALJ's decision became the final decision of the Commissioner subject to judicial review by this Court under 42 U.S.C. § 405(g).  (Tr. 1-6.)

## ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to his appeal.

**Pre-Onset Date**

On July 3, 2018, plaintiff saw Edward Doyle, M.D., family practitioner, for worsening arthritis pain, anxiety attacks, and problems with his attention span and memory. On examination plaintiff was slightly anxious and he complained of joint and back pain, stiffness, and muscle aches. He was prescribed hydrocodone-ibuprofen and klonopin. (Tr. 392-97.)

On January 31, 2019, plaintiff saw orthopedist Patrick R. Knight, M.D., for chronic left hip pain. Examination showed painful left hip range of motion with internal-external rotation. X-rays showed osteonecrosis or death of bone tissue of the left hip with some early collapse degenerative joint disease. (Tr. 367-69.)

On February 22, 2019, plaintiff saw Dr. Doyle for his left hip pain. Dr. Doyle noted plaintiff's condition had failed to improve adequately with activity modification, intermittent use of a cane, anti-inflammatory medications, and time. Examination showed limited range of motion in his left hip. He had zero degrees of internal rotation and 30 degrees external rotation. He was advised to undergo left total hip arthroplasty or hip replacement. Dr. Doyle noted that plaintiff had right total hip arthroplasty performed several years earlier in 2007 "with good outcome." (Tr. 371-72.)

On April 2, 2019, plaintiff underwent left total hip arthroplasty under Dr. Raymond R. Ritter, III.[1]  On May 2, 2019, plaintiff saw Dr. Doyle for follow-up on his left hip

---

[1] It is undisputed plaintiff underwent left total hip arthroplasty on April 2, 2019, although those records are not part of the record.

- 2 -

surgery. His left hip joint pain had improved since surgery, but he complained of anxiety, depression, joint pain, stiffness, and arthritis. Dr. Doyle did not document plaintiff's range of motion at that visit. He described plaintiff's polyarthralgia and anxiety as "stable on current treatment." He noted plaintiff was "quite pleased with his progress" and had a "good gait without a cane." He was currently a daily smoker and instructed on smoking cessation. (Tr. 406-11.)

### Post Onset Date

Plaintiff saw Dr. Doyle on August 27, 2019, complaining of similar symptoms and reporting he cannot sit for long periods of time. (Tr. 411-12.)

On October 24, 2019, plaintiff saw Dr. Doyle to complete disability paperwork. He noted complaints of muscle cramps, joint pain, joint swelling, stiffness, and muscle aches. Examination showed polyarthralgia of the hands and elbows along with an abnormal condition on palpation at the left hip, limited bilateral hip range of motion, and bilateral trochanteric bursa tenderness. (Tr. 417-20.)

Dr. Doyle also completed a medical source statement (MSS) that day. He opined plaintiff would miss five or more days of work per month due to his medical conditions. He opined plaintiff could occasionally sit, stand, and walk and never stoop or climb. He could frequently lift up to five pounds, occasionally lift six to ten pounds, infrequently lift 11 to 20 pounds, and never lift more than 20 pounds. He believed plaintiff could occasionally use his hands for fine and gross manipulation and infrequently raise his arms above shoulder height. He believed plaintiff experienced moderately severe pain and that plaintiff would be off task for 70% of the workday due to his pain. He opined plaintiff would need to elevate his legs above his waist due to pain, swelling, or other reasons for 20 to 30 minutes multiple times per day, and would need to take unscheduled breaks during an eight-hour workday. He believed plaintiff required occasional use of a cane for assistance walking. Finally, Dr. Doyle opined plaintiff would experience side effects from medication that would interfere with his ability to maintain focus and concentration. (Tr. 486-87.)

In November 2019 and July 2020, plaintiff completed Function Reports that asked him to check any items his illness, injuries, or conditions affect.  He did not check "using hands."  Among other things, plaintiff reported that his activities of daily living included selfcare, meal preparation, household chores, yardwork, driving, shopping in stores, and fishing.  (Tr. 274-80, 300-07.)

On January 10, 2020, plaintiff saw Dr. Doyle for pain follow-up .  Plaintiff reported complaints of left shoulder and left elbow pain.  He also complained of muscle cramps, joint pain, joint swelling, back pain, stiffness, and muscle aches.  Examination again noted polyarthralgia of the hands and elbows.  Plaintiff saw Dr. Doyle telephonically for follow-up during the Covid-19 pandemic, during which time he was doing well at times but also continued to report similar complaints of pain.  Dr. Doyle continued to refill plaintiff's prescriptions of doxycycline hyclate and hydrocodone-ibuprofen.  (Tr. 453-80.)

On March 3, 2020, plaintiff underwent a consultative examination with Matthew W. Karshner, M.D., a physical medicine and rehabilitation specialist.  Plaintiff reported chronic pain affecting his shoulder, elbows, hips, hands, knees, ankles, and entire spine.  He reported his pain is worse with activity, lifting, and sitting too long.  Plaintiff reported that he was independent with all activities of daily living, although he indicated he engaged in limited activities such as stretching and walking when he feels he can.  Physical examination of elbows, wrists and hands, knees and ankles revealed no erythema, edema, effusion or crepitance, and no report of pain that day.

Dr. Karshner noted that although plaintiff stated that his legs become numb if he sits too long, he was able to drive from his home to the doctor's office, a 45-60 minute drive with no numbness involving his legs.  Dr. Karshner also noted plaintiff walked without difficulty from the waiting area to the height and weight measuring station, bent forward, and picked up his shoes after height and weight were measured, and walked to the examination room without difficulty.  Dr. Karshner noted that although plaintiff stated his symptoms included swelling of his arms and legs, on examination he had no edema, normal muscle tone and mass, and full strength.  Dr. Karshner found no "pain behaviors."

Dr. Karshner noted there was no joint pain, swelling, tenderness or evidence of inflammation in any joint, he had full grip strength, his fine or gross motor movement of the digits was normal, and his gait was normal with no assistive device needed.  Dr. Karshner found no true neurological abnormalities during examination.  He concluded plaintiff demonstrated the ability to perform and sustain work related functions including sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling essentially without restriction.  (Tr. 430-33.)

On June 2, 2020, plaintiff underwent a mental diagnostic evaluation conducted by Jerry L. Cunningham, Psy. D.  Plaintiff reported being anxious almost every day despite medication.  He reported irritability, racing thoughts, difficulty concentrating, difficulty carrying out or completing tasks, and restless sleep.  He reported memory issues relating to having Rocky Mountain Spotted Fever in the past.   (Tr. 440-47.)

Dr. Cunningham noted that plaintiff had never received mental health services. Plaintiff told Dr. Cunningham that he was able to take care of his personal hygiene, do light chores around the house, cook, prepare meals, go shopping autonomously, manage money effectively, participate in social activities, and communicate adequately.  Plaintiff reported he had some issues walking when he sits longer.  Plaintiff was cooperative and gave adequate effort.  Dr. Cunningham noted that plaintiff reported memory/cognitive problems but there was no significant evidence of memory/cognitive issues in this session. Dr. Cunningham concluded his mental status examination was generally unremarkable.  Dr. Cunningham concluded plaintiff met the criteria for unspecified anxiety disorder.  He did not meet the full criteria for generalized anxiety disorder. Dr. Cunningham opined plaintiff could perform simple tasks, but more complex tasks would be more difficult for him to remember and complete and may take him longer to perform.  Dr. Cunningham believed plaintiff had mild difficulty interacting appropriately with supervisors, coworkers, and the public.  He opined plaintiff would have mild difficulty responding to usual work situations and to change in a routine setting.  (*Id.*)

On October 1, 2020, state agency consultant Richard Tipton, M.D., opined that plaintiff could lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently. Dr. Tipton believed plaintiff could stand and/or walk for a total of six hours and sit for six hours in an eight-hour workday. He opined plaintiff could never climb ladders, ropes, and scaffolds, but could frequently climb ramps and stairs. He believed plaintiff could frequently balance and kneel, and could occasionally stoop, crouch, and crawl. He believed plaintiff should avoid concentrated exposure to extreme cold and hazards such as machinery and heights. (Tr. 98-99.)

## **ALJ HEARING**

On February 24, 2021, plaintiff appeared and testified to the following before an ALJ. (Tr. 34-59.) He could no longer function in his former workplace as of May 28, 2019, following his second hip surgery. He has memory problems due to Rocky Mountain Spotted Fever and cannot perform physical tasks due to arthritis, bilateral hip replacement, and degenerative joint disease. He has anxiety attacks characterized by rapid heartbeat. His memory issues are so severe his former employer thought he had dementia. He recalls instances of forgetting conversations with customers. He has difficulty lifting, sitting, and standing. He can stand in one place for only 5-10 minutes. Walking sometimes helps, but he can only walk for five minutes longer than he can stand. He can sit for 5-10 minutes before pain and tingling sets in his legs. He can lift only 10-15 pounds before feeling discomfort, throbbing, and swelling in his pelvic area. He occasionally uses a cane, about six times per month. (Tr. 42-51.)

A vocational expert testified that a hypothetical individual at the light exertional level with limitations that would become plaintiff's RFC could not perform plaintiff's past relevant work. However, he could perform work as an electrical assembler, marker, and mail clerk. The vocational expert testified all work would be precluded if the individual were off task more than 15 percent of a workday. (Tr. 53-59.)

## DECISION OF THE ALJ

On March 29, 2021, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 12-24.)  At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 28, 2019, his alleged onset date.  At Step Two, the ALJ found plaintiff had the following severe impairments: status post bilateral hip replacements, arthralgias, and anxiety disorder.  At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1.  (Tr. 15-16.)

The ALJ determined that plaintiff had the RFC to perform "less than a full range of light work" as defined under the regulations with the following limitations:

> [He] is able to sit for 6 hours out of 8 hours; and he can stand and walk for 4 hours out of 8 hours.  [He] must have the ability to shift positions without leaving his duty station.  [He] is able to lift, carry, push, or pull 10 pounds frequently and up to and including 20 pounds occasionally.  [He] should never climb ladders, ropes, or scaffolding.  He can frequently climb stairs or ramps.  [He] is able to occasionally crawl, stoop, kneel, and crouch.  He should never have concentrated exposure to extreme cold, to vibration, or to hazards, such as dangerous machinery and unprotected heights.  [He] must have duties that are simple, repetitive, and routine.

(Tr. 16-17.)  The ALJ concluded, with VE testimony, that plaintiff could not return to his past relevant work.  However, there were other jobs plaintiff could perform such as electrical assembler, marker, and mail clerk.  Accordingly, the ALJ concluded that plaintiff was not disabled under the Act.  (Tr. 22-24.)

## GENERAL LEGAL PRINCIPLES

In reviewing the Commissioner's denial of an application for disability insurance benefits, the Court determines whether the decision complies with the relevant legal requirements and is supported by substantial evidence in the record. *See* 42 U.S.C. 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009).  Substantial evidence is "more than a mere scintilla" and "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The review considers not only the record for the existence of substantial evidence in support of the Commissioner's decision. It also takes into account whatever in the record fairly detracts from that decision. *Cox v. Apfel,* 160 F.3d 1203, 1207 (8th Cir. 1998). We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process); *Pates-Fires,* 564 F.3d at 942.

Steps One through Three require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform his past relevant work (PRW). *Id.* § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to do so. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to his PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## DISCUSSION

Plaintiff's sole argument on appeal is that the ALJ erred in evaluating the opinion of treating medical source, Dr. Edward Doyle. Plaintiff contends that instead of focusing on the relevant deficits noted during the examinations, the ALJ impermissibly assumed the role of doctor by focusing on testing that was not conducted and drawing a medical conclusion without any record support. He contends the ALJ narrowly relied on a selective reading of the evidence and focused only on areas where she believed Dr. Doyle's examinations were lacking. He argues the ALJ mischaracterized evidence she cited. He argues the ALJ failed to explain her conclusion that Dr. Doyle's opinions were not consistent with Dr. Karshner's March 2020 consultative examination and his level of reported activities of daily living. He also complains the ALJ failed to explain her finding that plaintiff's activities of daily living are inconsistent with Dr. Doyle's opinions. He argues the ALJ gave no consideration to Dr. Doyle's opinion concerning time spent off-task due to pain and side effects from medications. He argues the ALJ failed to account for plaintiff's pain. He argues the failure to adopt Dr. Doyle's opinion resulted in an incomplete hypothetical question to the vocational expert.

The Court disagrees with plaintiff's arguments. Plaintiff applied for benefits after March 27, 2017, and therefore the ALJ applied the new set of regulations for evaluating medical evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). The revised regulations redefine how evidence is categorized, including "medical opinion" and "other medical evidence," and how an ALJ will consider these categories of evidence in making the RFC determination. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c.

The new rules provide that adjudicators evaluate all medical opinions and findings using the factors delineated in the new regulations. Supportability and consistency are the most important factors, and their application must be explained. Other factors which "will

be considered" and about which adjudicators "may but are not required to explain" are the medical source's "treatment relationship" with the claimant, including the length, frequency, purpose and extent of the treating relationship, and whether the source has an examining (as opposed to non-examining) relationship with the claimant; specialization; and "other factors" such as whether the source has familiarity with other evidence in the claim or understanding of the Administration's disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(b), (c) (2017).

Under the new regulations, a "medical opinion" is a statement from a medical source about what an individual can still do despite his impairments and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work. 20 C.F.R. § 404.1513(a)(2). A medical opinion does not include judgments about the nature and severity of an individual's impairments, medical history, clinical findings, diagnosis, response to prescribed treatment, or prognosis. 20 C.F.R. § 404.1513(a)(3).

The ALJ properly considered Dr. Doyle's opinion according to the regulations, including the two most important factors, supportability and consistency. The ALJ recognized Dr. Doyle as plaintiff's treating source yet found his opinion unpersuasive. The ALJ noted that Dr. Doyle provided no supporting explanation or citation to any records to support his opinion. The ALJ also noted Dr. Doyle's May 2019 treatment notes did not support the extreme limitations he suggested. Specifically, the ALJ noted that in May 2019, Dr. Doyle noted plaintiff's polyarthralgia was stable on current treatment and that the musculoskeletal examination merely noted "polyarthralgias" but did not record range of motion or other specific limitations. The ALJ also noted that Dr. Doyle's opinion was dated October 24, 2019, only five months after the May 2019 treatment note the ALJ cited. (Tr. 21-22.)

The ALJ also considered Dr. Doyle's opinion that plaintiff had limitations in his ability to use his hands for fine and gross manipulation and noted there were no documented examinations to support hand complaints that would warrant manipulative

limitations.  The ALJ also considered Dr. Doyle's opinion that plaintiff occasionally required the use of a cane and noted that the record evidence made no mention of the use of a cane following his recent surgery.  Lastly, the ALJ noted that Dr. Doyle's opinion was inconsistent with the unremarkable physical consultative examination conducted by Dr. Karshner.  (Tr. 21-22.)

The Court concludes the ALJ's conclusions concerning the consistency and supportability of Dr. Doyle's opinion were supported by the record.  Dr. Doyle's opinion was not consistent with the unremarkable consultative examination with Dr. Karshner which noted a normal gait with no assistive device.  (Tr. 430-39).  Dr. Doyle's opinion was also not consistent with plaintiff's treatment notes, which showed a "good outcome" from both hip surgeries, normal muscle strength and tone, and an ability to walk without an assistive device.  (Tr. 371, 378, 430-31.)

The ALJ considered the relevant record evidence and weighed conflicting evidence.  (Tr. 9-24.)  The ALJ noted plaintiff had some abnormal signs on examination, including polyarthralgia or joint pain, and some comprehension problems with reading a passage, recalling digits forward, and repeating a sentence.  However, the ALJ also noted plaintiff had some normal signs on examination, including an unremarkable physical consultative examination, a normal gait without an assistive device, and mental status examinations describing plaintiff as alert and cooperative with normal attention span and concentration.  (Tr. 18-19, citing Tr. 371, 373, 378, 380-81, 402, 419-20, 430-39, 441, 446, 458, 466.)

Plaintiff asserts the ALJ did not explain how Dr. Doyle's opinion was inconsistent with Dr. Karshner's March 2020 consultative examination.  However, the Court notes that both plaintiff and the ALJ described the consultative examination findings as unremarkable.  (Pl. Br. at 8, Tr. 18.)  The ALJ listed Dr. Karshner's normal examination findings, including a normal examination of plaintiff's hands and wrists, as well as a normal gait with no need for an assistive device.  (Tr. 18.)  In her opinion, the ALJ discussed Dr. Karshner's examination findings separately from her discussion of Dr. Doyle's opinion.  When the decision is read in its entirety, instead of reading only the two

paragraphs addressing Dr. Doyle's opinion in isolation, it shows the ALJ properly considered the record evidence as whole when evaluating the supportability and consistency of the opinion.  In sum, Dr. Doyle's opinion is not supported by or consistent with the remainder of the record evidence.

Plaintiff also contends the ALJ failed to explain her finding that plaintiff's activities of daily living are inconsistent with Dr. Doyle's opinions.  The ALJ found that Dr. Doyle suggested extensive limitations that were not consistent with plaintiff's level of reported activities of daily living.  (Tr. 21-22.)  The ALJ noted that plaintiff described activities of daily living that are not physically limited to the extent one would expect, given the alleged severity of [plaintiff's] physical symptoms and limitations.  (Tr. 18.) The ALJ then listed plaintiff's activities of daily living, which included selfcare, meal preparation, household chores, yardwork, driving, shopping in stores, and fishing.  (Tr. 18-19.)  Like the previous argument, the ALJ discussed plaintiff's activities of daily living independently from any particular medical opinion.  When the decision is read in its entirety, it shows the ALJ properly considered the record evidence as whole.

Plaintiff finally argues the ALJ failed to consider Dr. Doyle's opinion concerning time off-task due to pain and side effects from medication.  The ALJ did not restate every limitation suggested by Dr. Doyle.  However, that is not required under the regulations. Nor does it necessarily follow that the ALJ excluded portions of Dr. Doyle's opinion from consideration.  The ALJ acknowledged Dr. Doyle opinion regarding "extensive limitations" and permissibly discussed Dr. Doyle's opinion as a whole rather than analyzing each individual limitation.  (Tr. 21-22.)

Of further note, while the ALJ explained why she found Dr. Doyle's opinion to be unpersuasive, she also explained why she found the prior administrative medical findings to be persuasive, particularly the factors of consistency and supportability, pursuant to the regulations.  (Tr. 20-21.) With regard to supportability, the ALJ noted that state agency consultants "are highly qualified medical sources who are experts in the evaluation of medical issues in disability claims under the Social Security Act" (Tr. 21, citing 20 CFR

404.1513a(b)(1), 416.913a(b)(1)).  She also noted that state agency consultant Dr. Tipton's prior administrative medical findings were consistent with, and supported by, the overall objective evidence as well as plaintiff's reported activities of daily living.  (Tr. 21.)

The Court concludes substantial evidence supports the ALJ's decision as a whole, including her evaluation of the opinion evidence.

## VI.  CONCLUSION

For the reasons set forth above, the Court concludes substantial evidence supports the ALJ's decision as a whole, including her evaluation of the opinion evidence.  The decision is affirmed.  A separate Judgment Order is issued herewith.

      /s/ David D. Noce  
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 29, 2022.